RICHARD P. BILLINGHAM AND LINDA B. BILLINGHAM, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Billingham v. Commissioner
Docket No. 550-79.
United States Tax Court
T.C. Memo 1980-343; 1980 Tax Ct. Memo LEXIS 242; 40 T.C.M. (CCH) 1075; T.C.M. (RIA) 80343; August 27, 1980, Filed *242 Held, stipend received by petitioner during 1975 and 1976 not excludable from gross income as a scholarship or fellowship grant under section 117, I.R.C. 1954. Peter S. Lewicki, for the petitioners. James A. Nelson, for the respondent. WILES
MEMORANDUM FINDINGS OF FACT AND OPINION WILES, Judge: Respondent determined deficiencies of $569 and $647 in petitioners' Federal income taxes for 1975 and 1976, respectively. The sole issue for decision is whether certain amounts received by petitioner Richard P. Billingham while a resident at Virginia Mason Hospital qualified as scholarship or fellowship *243 grants excludable from gross income under section 117. [1]
FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Richard P. Billingham (hereinafter petitioner) and Linda B. Billingham, husband and wife, resided in Seattle, Washington, when they filed their petition in this case. They filed their 1975 and 1976 joint Federal income tax returns with the Western Service Center, Ogden, Utah. Petitioner graduated from the University of Rochester Medical School in June 1971. On July 1, 1975, petitioner began a residency in general surgery at Virginia Mason Hospital (VMH) is Seattle, Washington. He entered into a written residency agreement with VMH on November 12, 1974, covering the period from July 1, 1975 through June 30, 1976. This agreement was subsequently renewed for an additional one-year period ending June 30, 1977. During this two-year residency period, petitioner was not a candidate for a degree. In the residency agreement, VMH agreed, among other things, to pay petitioner a yearly stipend of $10,878 and to provide him with both a suitable environment *244 for education experience in the area of general surgery and a training program that met the standards of the Essentials of Approved Residencies prepared by the Council on Medical Education of the American Medical Association. Petitioner agreed, among other things, to perform the customary services of residency, to observe hospital policies, procedures, and regulations governing residents, and to obtain a regular license to practice medicine in the State of Washington. VMH is a nonprofit institution primarily dedicated to the care and treatment of patients. During 1975 and 1976, VMH maintained approximately 300 beds and was staffed by 125 physicians. Most of the staff physicians were associated with a private clinic affiliated with VMH. During the years at issue, there were 47 residents at VMH, 12-14 of whom (including petitioner) were general surgical residents. All residents at VMH were considered members of the medical staff. During his residency at VMH, petitioner was rotated through several surgical subspecialties including general surgery, neurosurgery, othopedic surgery, surgical pathology, and surgical obstetrics and gynecology. When assigned to any of these areas, *245 petitioner was responsible for the care of approximately ten to fifteen patients at any given time. For each subspecialty, petitioner was assigned to a particular staff physician who supervised his work and had ultimate responsibility for the care and treatment of the patient. Petitioner's duties included interviewing and examining patients, taking medical histories, proposing diagnoses, ordering tests, preparing progress notes, supervising the work of interns, making daily rounds, instructing interns in various surgical procedures, handling emergency room treatment, consulting on outpatient cases and assisting the staff physician in performing operations. In addition to these duties, petitioner also attended conferences and seminars devoted to the discussion of individual patients at VMH and prepared several research papers on a variety of medical topics. As a surgical resident, petitioner was expected to be on duty at VMH by a specified hour each morning to make his scheduled rounds and confer with other residents and staff physicians. He also had night call duty at various times during each month. In 1975 and 1976, VMH paid petitioner stipends of $5,439 and $10,878, respectively, *246 from which it withheld Federal income taxes and Social Security taxes. The payments made to petitioner were not based on financial need. All similarly experienced residents at VMH were paid the same yearly stipend. During the years at issue, petitioner also received substantial fringe benefits as a resident. VMH provided him with free uniforms and laundering thereof, comprehensive medical insurance, malpractice insurance, free meals and rooms while on duty, and two weeks of vacation. Petitioner was also entitled to discounts on drugs and medical supplies. On his joint Federal income tax returns for each of the years 1975 and 1976, petitioner excluded $3,600 from his gross income as a scholarship or fellowship grant under section 117.In his notice of deficiency, respondent determined that these amounts were improperly excluded from petitioner's income, as they represented taxable compensation for services rendered. OPINION We must decide whether certain amounts received by petitioner during 1975 and 1976 while a resident at VMH are excludable from his gross income under section 117.Petitioner argues that the stipends received from VMH enabled him to pursue his research, *247 teaching and studies in the field of general surgery and, therefore, qualify as scholarship or fellowship grants excludable under section 117. Respondent, on the other hand, contends that these stipends represented taxable compensation for petitioner's services to VMH.For the reasons set forth below, we agree with respondent.
Section 117(a)(1) excludes from gross income any amount received as a scholarship or fellowship grant. Section 117(b)(2)(B) limits the amount of the exclusion available to a nondegree candidate to $300 per month for 36 months. Section 1.117-4(c), Income Tax Regs., provides, in part, that payments made as compensation for past, present or future employment services are not excludable as scholarship or fellowship grants. In Binglar v. Johnson, 394 U.S. 741, 751 (1969), the Supreme Court upheld this regulation and noted its consistency with "the ordinary understanding of 'scholarships' and 'fellowships' as relatively disinterested, 'no-strings' educational grants, with no requirement of any substantial quidproquo from the recipients." The distinction between a nontaxable scholarship or fellowship grant and taxable compensation *248 turns on whether the primary purpose of the payments was to educate and train the recipient or to compensate him for services rendered. Brubakken v. Commissioner, 67 T.C. 249, 255 (1976); Weinberg v. Commissioner, 64 T.C. 771, 776 (1975); Reese v. Commissioner, 45 T.C. 407, 411 (1966), affd. per curiam 373 F. 2d 742 (4th Cir. 1967). On the basis of the evidence in this record, we conclude that the primary purpose of the payments made by VMH was to compensate petitioner for his services. During the years at issue, petitioner rendered extensive and valuable services to VMH, the effect of which was clearly to provide a substantial quid pro quo for the payments he received.See Rosenthal v. Commissioner, 63 T.C. 454, 459 (1975). Among his many duties at VMH, petitioner interviewed and examined patients, prepared medical histories, proposed diagnoses, made rounds, supervised and instructed interns, and assisted staff physicians in surgery. Although petitioner's activities were carefully supervised by staff physicians, ths is certainly not inconsistent with his receiving compensation for those activities. *249 Brubakken v. Commissioner, supra at 251. Petitioner argues, however, that his work at VMH merely duplicated work previously performed by staff physicians and was of no direct benefit to the hospital. We disagree. While there is evidence to indicate that some of petitioner's patients were occasionally examined by other residents and staff physicians, this does not render petitioner's work valueless. As we stated in Weinberg v. Commissioner, supra at 778: [In] providing medical treatment, the examination of the patient by several trained doctors and their views may often be of value, even though one of the doctors may have more experience than the others. Moreover, considering the wide range of activities petitioner performed as a resident, we are convinced that he made a valuable contribution to patient care at VMH for which he was compensated. See Fisher v. Commissioner, 56 T.C. 1201, 1213-1214 (1971). Viewed in their entirety, it is clear that petitioner's services at VMH exceeded the incidental duties normally associated with a scholarship or fellowship grant. See, e.g., Bieberdorf v. Commissioner, 60 T.C. 114 (1973). *250 Besides the nature and extent of petitioner's services, there are other factors which support the conclusion that these payments were compensatory. The amount of the stipend paid to petitioner was not based on financial need, as is usually true of scholarship or fellowship grants, but only upon his length of service with VMH. See Adams v. Commissioner, 71 T.C. 477, 478 (1978); Proskey v. Commissioner, 51 T.C. 918, 924 (1969). All similarly experienced residents at VMH were paid the same yearly stipend. Moreover, VMH withheld income and social security taxes from the amounts paid petitioner. See Adams v. Commissioner,supra at 487. In addition, petitioner received two weeks' vacation leave, medical and malpractice insurance, uniforms, meals and other fringe benefits indicative of an employment relationship. See Rosenthal v. Commissioner,supra;Anderson v. Commissioner,54 T.C. 1547 (1970). Notwithstanding these facts, petitioner maintains he is entitled to exclude a portion of the payments on the authority of Burstein v. United States, Ct. Cl. No. 402-76 (Trial Div., May 2, 1979), 43 AFTR 2d 1132, 79-1 USTC par. 9354. *251 The report of the trial judge in Burstein, however, was subsequently rejected by the Court of Claims and, therefore, has no precedential value. See     Ct. Cl.    ,     F. 2d     (May 14, 1980). We do not find the facts in this case materially different from the facts in many other cases which have held that stipends paid to medical residents constitute taxable compensation for services rendered. See, e.g., Birnbaum v. Commissioner,474 F. 2d 1339 (3rd Cir. 1973), affg. without published opinion a Memorandum Opinion of this Court; Parr v. United States,469 F. 2d 1156 (5th Cir. 1972); Adams v. Commissioner,supra;Weinberg v. Commissioner,supra. While we have no doubt that petitioner's work was highly educational and provided him with valuable training for later professional experiences, this does not convert the compensatory payments he received into nontaxable scholarship or fellowship grants. Fisher v. Commissioner,supra at 1215; Proskey v. Commissioner,51 T.C. 918, 925 (1969). Accordingly, we hold that no part of petitioner's stipend is excludable *252 from gross income under section 117. To reflect the foregoing, Decision will be entered for the respondent. Footnotes
1. Statutory references are to the Internal Revenue Code of 1954, as amended.↩